# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ROXANNE RIFE, et al.,

                Plaintiff,

     v.

THE AMERICAN FEDERATION OF
LABOR AND CONGRESS OF
INDUSTRIAL ORGANIZATIONS, et al.,

                Defendant.

CIVIL ACTION NO. 1:23-CV-01884

(MEHALCHICK, J.)

## MEMORANDUM

Before the Court are two motions to dismiss filed by the National American Federation of Labor and Congress of Industrial Industries ("National ALF-CIO") and the Pennsylvania American Federation of Labor and Congress of Industrial Organizations ("PA ALF-CIO"), Richard Bloomingdale ("Bloomingdale"), and Frank Synder ("Snyder") (collectively, "PA Defendants") (collectively with National AFL-CIO, "Defendants"). (Doc. 14; Doc. 16). Plaintiffs Ijada Wormsley-Ashby ("Ashby"), Roxanne Rife ("Rife"), and Samantha Shewmaker ("Shewmaker") (collectively, "Plaintiffs") initiated this lawsuit by filing a complaint against Defendants on November 13, 2023. (Doc. 1). Therein, Plaintiffs allege Defendants violated Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), and the Pennsylvania Human Relations Act ("PHRA"). (Doc. 1). For the following reasons, National AFL-CIO and PA Defendants' motions to dismiss will be **DENIED**. (Doc. 14; Doc. 16).

I.   <u>PROCEDURAL AND FACTUAL BACKGROUND</u>

The following background is taken from Plaintiffs' complaint. National AFL-CIO is "the largest federation of unions in the United States," representing 56 national and international labor unions and over 12 million working people. (Doc. 1, ¶ 1). PA AFL-CIO is a state federation and chartered organization of the National AFL-CIO. (Doc. 1, ¶ 19). PA AFL-CIO acts as a local agent of National AFL-CIO and "its employees and officers are bound by the National AFL-CIO's Constitution, policies, and 'Rules Governing AFL-CIO State Central Bodies.'" (Doc. 1, ¶ 19). Plaintiffs allege the following regarding National AFL-CIO and PA AFL-CIO's relationship:

> At all relevant times, the National AFL-CIO has had the authority to hire and fire employees of the PA AFL-CIO, promulgate work rules and assignments relative to the PA AFL-CIO, set conditions of employment at the PA AFL-CIO, engage in supervision of employees (including discipline) at the PA AFL-CIO, and has had control of PA AFL-CIO employee and other business records.

(Doc. 1, ¶ 18).

Plaintiffs are former employees of Defendants who worked closely with Bloomingdale and Snyder. Plaintiffs specify that their "nominal employer" was PA AFL-CIO. (Doc. 1, ¶ 17). Ashby began working for Defendants in 2015, Shewmarker began working for Defendants in 2016, and Rife began working for Defendants in 2019. (Doc. 1, ¶¶ 39-41). During their employment, each Plaintiff was subjected to disparaging and discriminatory treatment by Synder and Bloomingdale. (Doc. 1, at 12, ¶¶ 42-125). This includes being paid less than their male peers, verbally harassed, threatened with their jobs, and publicly humiliated. (Doc. 1, ¶¶ 42-125). By way of example, Plaintiffs allege that when Ashby "asked for personal time off, on most occasions, Defendant Snyder would gratuitously give her a

hard time and baselessly threaten her job (falsely) stating that her, 'work isn't acceptable,' and that he was 'going to fire [her]'" and that Snyder would "make threatening remarks about how he could fire Ms. Ashby on a whim and make sure that she was unable to collect unemployment insurance (i.e., 'I'm gonna fire your ass; don't think you will collect unemployment')." (Doc. 1, ¶¶ 50, 55). Plaintiffs allege that Rife was subjected to "sexist comments by Defendant Bloomingdale, including that, 'women belong in clerical roles, not men,' and 'women were always supposed to be in clerical [roles],' among others," and that both Bloomingdale and Snyder would demean, mock, humiliate, and make sexist comments to and about Rife in front of her peers. (Doc. 1 ¶¶ 65, 67-75). Plaintiffs allege that Snyder would refuse to give Shewmaker feedback on her work and that, on the occasions when Shewmaker was permitted to enter Snyder's office, "his demeanor would turn hostile, contrarian, and aggressive within moments." (Doc. 1, ¶ 79). Further, Plaintiffs allege that "Snyder would often promise Ms. Shewmaker that he would meet with her to discuss work the next day or at another specified time when he was supposedly available," but at the planned meeting times he would "be hundreds of miles away on the other side of the state or already had a scheduling conflict." (Doc. 1, ¶ 81). Plaintiffs also allege that Snyder "relished tearing down Ms. Shewmaker's work plans and ideas. Defendant Snyder treated nearly every contribution Ms. Shewmaker made as an indication of her incompetence" and would "even sabotage Ms. Shewmaker's work, on top of heavily and unduly criticizing and micro-managing her performance." (Doc. 1, ¶ 83).

According to Plaintiffs, the men who worked under Bloomingdale and Snyder were treated much differently than how Plaintiffs were treated. (Doc. 1, ¶¶ 66-68, 75, 84, 113, 114-15). Whenever the men working at PA AFL-CIO had an issue involving their workload or

3

skills, "Defendant Snyder and Defendant Bloomingdale would simply shift the work and responsibilities of poor performing or overwhelmed male employees onto the other female employees like Ms. Shewmaker and Ms. Rife." (Doc. 1, ¶ 114). Plaintiffs allege that their mistreatment at PA AFL-CIO was clearly attributable to Ms. Ashby's race and disability and all Plaintiffs' female gender. (Doc. 1, ¶¶ 42-125). Each Plaintiff complained about her treatment, whether that be directly to Snyder and Bloomingdale or National AFL-CIO leaders, however, their complaints either "fell on deaf ears" or were met with further abuse, beratement, and ridicule. (Doc. 1, ¶¶ 42, 125, 127, 131, 144-48). Eventually, each Plaintiff was constructively discharged, with Rife resigning on August 15, 2021, due to health problems attributed to her hostile work environment and constant discrimination, Shewmaker resigning on March 31, 2022, after several fruitless conversations with National AFL-CIO about the mistreatment she endured at PA AFL-CIO, and Ashby resigning in April of 2022, after filing Charges of Discrimination against Defendants citing "harassment, discrimination, and lack of support" as well as an "intolerable" work environment. (Doc. 1, ¶¶ 125-135, 136-143, 144-149). Plaintiffs allege that even after their resignations, Defendants retaliated against Ashby by firing her brother on January 27, 2023, who is alleged to have been an exemplary employee of Defendants. (Doc. 1, ¶¶ 153-56).

After their constructive discharges, Plaintiffs timely filed charges of discrimination related to the allegations in their complaint with the Pennsylvania Human Relations Commission ("PHRC") and cross-filed with the Equal Employment Opportunity

Commission ("EEOC").[1] (Doc. 1, ¶ 15). Plaintiffs filed this lawsuit on November 13, 2023. (Doc. 1). In their complaint, Plaintiffs allege the following Causes of Action: Discrimination and Hostile Work Environment under Title VII against National AFL-CIO and PA AFL-CIO; Retaliation under Title VII against National AFL-CIO and PA AFL-CIO; Discrimination and Hostile Work Environment Under Section 1981 against National AFL-CIO and PA AFL-CIO; Retaliation under Section 1981 against National AFL-CIO and PA AFL-CIO; Discrimination under the Americans with Disabilities Act against National AFL-CIO and PA AFL-CIO; Retaliation under the Americans with Disabilities Act against National AFL-CIO and PA AFL-CIO; Retaliation under the Pennsylvania Human Relations Act against all Defendants; and Aiding and Abetting under the Pennsylvania Human Relations Act against all Defendants. (Doc. 1, at 32-39). As relief, Plaintiffs seek damages and attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of this action. (Doc. 1, at 39-40).

Defendants each filed their motions to dismiss on January 8, 2024. (Doc. 14; Doc. 16). Defendants each filed a brief in support of their motions to dismiss on January 22, 2024. (Doc. 22; Doc. 23). Plaintiffs filed an omnibus brief in opposition addressing each motion on February 19, 2024. (Doc. 19). National AFL-CIO filed a reply brief on March 11, 2024. (Doc. 27). Accordingly, the motion is fully briefed and ripe for disposition.

---

[1] Plaintiffs filed this action more than one year after filing their charges with the PHRC and within 90 days of receiving Notices of Right to Sue from the EEOC for: (i) Shewmaker on August 16, 2023; (ii) Rife on November 10, 2023; and (iii) Ashby on November 10, 2023, and within two years after the PHRC released jurisdiction of Plaintiffs' Claim: (i) on May 31, 2023, for Shewmaker; (ii) on February 2, 2023, for Rife; and (iii) on September 27, 2023, for Ashby, satisfying the procedural prerequisites for the commencement of the instant action. (Doc. 1, ¶ 16).

II.   LEGAL STANDARDS

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions…'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The court also need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 526 (1983).

6

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

## III.   DISCUSSION

Defendants do not dispute that Plaintiffs have plausibly alleged claims under Title VII, the ADA, and the PHRA. (Doc. 22; Doc. 23; Doc. 26, at 5). Instead, Defendants challenge Plaintiffs' allegation that the National AFL-CIO and PA AFL-CIO are joint employers. (Doc. 22, at 12-22; Doc. 23, at 8-9). National AFL-CIO independently argues that Plaintiffs have failed to allege that National AFL-CIO violated the PHRA through aiding and abetting the conduct of PA AFL-CIO and that Plaintiffs failed to state a claim for retaliation on behalf of Ashby against National AFL-CIO. (Doc. 22, at 23-26). PA Defendants independently argue that Plaintiffs are not entitled to punitive damages under the PHRA. (Doc. 23, at 11-12). The Court will address each argument in turn.

7

A.  T̲ʜ̲ᴇ̲ ̲J̲ᴏ̲ɪ̲ɴ̲ᴛ̲ ̲E̲ᴍ̲ᴘ̲ʟ̲ᴏ̲ʏ̲ᴇ̲ʀ̲ ̲R̲ᴇ̲ʟ̲ᴀ̲ᴛ̲ɪ̲ᴏ̲ɴ̲s̲ʜ̲ɪ̲ᴘ̲ ̲ʙ̲ᴇ̲ᴛ̲ᴡ̲ᴇ̲ᴇ̲ɴ̲ ̲N̲ᴀ̲ᴛ̲ɪ̲ᴏ̲ɴ̲ᴀ̲ʟ̲ ̲A̲F̲L̲-̲C̲I̲O̲ ̲ᴀ̲ɴ̲ᴅ̲
    P̲A̲ ̲A̲F̲L̲-̲C̲I̲O̲

Defendants submit that Plaintiffs have failed to allege that National AFL-CIO and PA AFL-CIO are "joint employers" for the purpose of this action. (Doc. 22, at 12; Doc. 23, at 8-9). According to National AFL-CIO, the complaint does not contain "non-conclusory facts that support a finding that National AFL-CIO exercised actual control over the day-to-day operations of PA ALF-CIO or had any involvement in Plaintiffs' employment." (Doc. 22, at 12). Defendants further argue that the complaint only identifies a laundry list of powers exercised by National AFL-CIO. (Doc. 22, at 12; Doc. 23, at 8-9). Plaintiffs respond that they met their burden to plausibly establish a joint employer relationship between National AFL-CIO and PA AFL-CIO because they have alleged facts "demonstrating that the National AFL-CIO promulgates work rules and assignments and sets conditions of employment for the PA AFL-CIO's workers." (Doc. 26, at 12-13).

Independent legal entities may be joint employers when they both "exert significant control over the same employees—where from the evidence it can be shown that they share or co- determine those matters governing essential terms and conditions of employment." *NLRB v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1124 (3d Cir. 1982). A joint employer relationship is typically shown using common law agency principles. Courts look to the following factors when determining whether two entities are to be considered joint employers: "(1) the entity's authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours (2) its day-to-day supervision of employees, including employee discipline; and (3) its control of employee records, including payroll, insurance, taxes and the like." *Plaso v. IJKG, LLC*, 553

F. App'x 199, 204-05 (3d Cir. 2014) (internal citations omitted); *see also Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 214 (3d Cir. 2015). Given the numerous considerations involved in this inquiry, "[t]he Third Circuit has long established that fact discovery is needed to prove the existence of a joint-employer relationship." *Nolan v. TalentBurst, Inc.*, No. CV 22-4556, 2024 WL 1386036, at *6 (E.D. Pa. Mar. 29, 2024) (citing *Graves v. Lowery*, 117 F.3d 723, 729 (3d Cir. 1997).

Numerous allegations in the complaint support Plaintiffs' argument that National AFL-CIO sustained broad control over the inner workings of PA AFL-CIO. (Doc. 26, at 13). These allegations include, but are not limited to, that National AFL-CIO mandates PA AFL-CIO to submit a unified work plan to National AFL-CIO every two years detailing all of PA AFL-CIO's employees' roles, responsibilities, budgets, and activities, that National AFL-CIO can modify, change, or reject this work plan, that National ALI-CIO has authority to discipline PA AFL-CIO employees, that National AFL-CIO establishes benefit and pension plans for PA AFL-CIO employees, and that National ALF-CIO is enabled to supervise and discipline PA AFL-CIO supervisors and officials. (Doc. 1, ¶¶ 22, 29, 24, 25, 29). Considering these allegations and the Third Circuit's conclusion that "the precise contours of an employment relationship can only be established by a careful factual inquiry," it would be premature to dismiss Plaintiffs' claim that the National AFL-CIO and PA AFL-CIO are joint employers at this stage of the litigation. *See Barone v. Idexcel, Inc.*, No. 1:22-CV-01232, 2023 WL 146240, at *5 (M.D. Pa. Jan. 10, 2023) ("Plaintiff has alleged sufficient facts upon which he should be permitted to develop his claims through discovery before any determination can be made as to whether he was jointly employed by [Defendants]."). Accordingly, Defendants' motions to dismiss are **DENIED** on this basis. (Doc. 14; Doc. 16); *see Hayes v. Waddell & Reed,*

*Inc.*, No. CA 12-293, 2013 WL 5434139 (W.D. Pa. Sept. 26, 2013) (denying dismissal of joint employer claims after considering the "fact-intensive" nature of the analysis); *see also Myers v. Garfield & Johnson Enterprises, Inc.*, 679 F. Supp. 2d 598 (E.D. Pa. 2010) (denying motion to dismiss joint employer claims while recognizing "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims" (internal citations omitted)).

B.  WHETHER NATIONAL AFL-CIO AIDED AND ABETTED PA AFL-CIO'S DISCRIMINATORY CONDUCT

National ALF-CIO further submits that Plaintiffs have failed to allege that it aided and abetted in discrimination against Plaintiffs in violation of the PHRA. (Doc. 22, at 23). National AFL-CIO claims that "the Complaint contains no allegations that the National [ALF-CIO] both knew about and substantially assisted or encouraged the discrimination Plaintiffs allege occurred." (Doc. 22, at 23). Plaintiffs argue they have met their burden by alleging "National AFL-CIO both knew about the discrimination to which Plaintiffs were being subjected since 2017 and promised Plaintiffs Shewmaker and Ashby an investigation into their concerns of gender, race, and disability discrimination, but then proceeded to obstruct and delay the investigation, which encouraged and enabled the unlawful conduct to continue."[2] (Doc. 1, ¶ 128-29, 144-46, 148; Doc. 26, at 21).

Section 955(e) of the PHRA makes it unlawful for a labor organization to "aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful

---

[2] Plaintiffs also correctly point out that National AFL-CIO relies on cases decided on a motion for summary judgment after the introduction of evidence, not on a motion to dismiss, in making their arguments. (Doc. 26, at 22-23); *see Hollinghead v. City of York, Pa.*, 11 F. Supp. 3d 450 (M.D. Pa. 2014), *aff'd sub nom. Hollinghead v. City of New York*, 592 Fed. Appx. 110 (3d Cir. 2015).

discriminatory practice." 43 Pa. Cons. Stat. § 955(e); *see also Lett v. Se. Pennsylvania Transportation Auth.*, No. CV 19-3170-KSM, 2022 WL 4542093, at *17-18 (E.D. Pa. Sept. 27, 2022), *reconsideration denied sub nom. Lett v. Int'l Ass'n of Sheet Metal, Air, Rail & Transportation Workers, Loc. 1594*, No. CV 19-3170-KSM, 2023 WL 2163827 (E.D. Pa. Feb. 22, 2023); *see also Hewitt v. BS Transportation of Illinois, LLC*, 355 F. Supp. 3d 227, 237-38 (E.D. Pa. 2019). "[A] defendant may be liable under § 955(e) either as a result of [its] own discriminatory conduct, or for refusing to take prompt and remedial action against any discrimination suffered by an employee." *Hollinghead v. City of York*, 912 F. Supp. 2d 209, 223 (M.D. Pa. 2012) (quotation marks omitted). Here, Plaintiffs allege that, in accordance with PA AFL-CIO policy, they reported discriminatory conduct to National AFL-CIO and that National AFL-CIO indicated that it would take responsive action. (Doc. 1, ¶¶ 127-28, 144-48). However, after hiring a lawyer and commencing an investigation, Plaintiffs allege the National AFL-CIO "proceeded to obstruct and delay the investigation, which encouraged and enabled the unlawful conduct to persist." (Doc. 1, ¶¶ 27, 128-29, 144-48). At this early stage of the litigation, these allegations are sufficient for Plaintiffs' aiding and abetting claims to survive a motion to dismiss. *See Lett v. Se. Pennsylvania Transportation Auth.*, No. CV 19-3170-KSM, 2020 WL 12702548, at *2 (E.D. Pa. June 11, 2020) (finding plaintiff's claim that a labor organization aided and abetted in discrimination in violation of the PHRA by failing to take appropriate action against discrimination sufficient to survive a motion to dismiss); *cf. Wilson v. Columbia Gas of Pennsylvania*, 676 F. Supp. 3d 424 (W.D. Pa. 2023) (finding reporting discriminatory conduct to a supervisor who fails to take action to end the discrimination to be sufficient to allege a claim for aiding and abetting under the PHRA). National AFL-CIO's motion to dismiss is therefore **DENIED** on this basis.

11

C. ASHBY'S RETALIATION CLAIM

National AFL-CIO and Plaintiffs dispute the sufficiency of Ashby's retaliation claim against National AFL-CIO.[3] (Doc. 22, at 25; Doc. 26, at 23-24). To state a claim of retaliation under Title VII, the ADA, the PHRA, and Section 1981, a plaintiff must allege that: (1) they engaged in protected activity; (2) the employer took an adverse employment action against them; and (3) there was a causal connection between their participation in the protected activity and the adverse employment action taken by their employer. *Selvato v. SEPTA*, 658 F. App'x 52, 56 (3d Cir. 2016); *see McCarty v. Marple Twp. Ambulance Corps*, 869 F. Supp. 2d 638, 643 (E.D. Pa. 2012) ("PHRA violations are subject to the same analysis as ADA and Title VII claims."); *see also Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 415 (3d Cir. 1999) (analyzing retaliation claims under Title VII, § 1981, and the PHRA under the same framework); *see also Doe v. Triangle Doughnuts, LLC*, 472 F. Supp. 3d 115, 138 (E.D. Pa. 2020) (noting the analysis for retaliation is the same under Title VII, the ADA, and the PHRA). Here, Plaintiffs have sufficiently pled each element of Ashby's retaliation claim. Ashby's complaints to management about the harassment she faced while working at PA ALF-CIO and her filing of a Charge of Discrimination with the Pennsylvania Human Rights Commission satisfy the first element of the retaliation claim, that Ashby engaged in protected activity. (Doc. 1, ¶¶ 125-29, 152-56); *see Mufti v. Aarsand & Co.*, 667 F. Supp. 2d 535, 552 (W.D. Pa. 2009) ("Protected activity includes formal charges of discrimination as well [as] informal protests of discriminatory employment practices, including making complaints to management, writing

---

[3] Plaintiffs again here point to the fact that National AFL-CIO has based its argument largely on a decision addressing a motion for summary judgment, not a motion to dismiss. (Doc. 26, at 24); *See Moore v. CVS Rx Servs., Inc.*, 660 F. App'x 149, 152 (3d Cir. 2016).

critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges." (quotation marks omitted)). Next, Plaintiffs first establish Ashby suffered an adverse action by alleging that she was constructively discharged and was subsequently "denied the opportunity to work during her two-week notice period," as was "customary" at PA AFL-CIO. (Doc. 1, ¶ 130). To this point, Plaintiffs also allege that "[n]early all other employees who gave advanced notice about their planned departures, but who had not complained about discrimination and/or harassment unlike Ms. Ashby, were allowed to work through the end of their notice periods." (Doc. 1, ¶ 131). Second, Plaintiffs allege Ashby suffered an adverse action when her brother was terminated from PA ALF-CIO as a result of her exercise of protected activity. (Doc. 1, ¶ 152-56). To plead an adverse employment action, Plaintiffs need only allege Defendants took action against Ashby that might dissuade a reasonable worker from engaging in protected activity. *See Mercer v. Se. Pennsylvania Transit Auth.*, 26 F. Supp. 3d 432, 447 (E.D. Pa. 2014), *aff'd sub nom. Mercer v. SEPTA*, 608 Fed. Appx. 60 (3d Cir. 2015); *see also Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 68, (2006). Here, in consideration of the Third's Circuit "broad view of what constitutes an adverse employment action," Plaintiffs' allegations about her constructive discharge, her inability to work through the notice period of her discharge, and her brother's termination satisfy the adverse action element of her retaliation claim for the purpose of a motion to dismiss. *Newsome v. City of Philadelphia*, 500 F.Supp.3d 336, 341 (E.D. Pa. 2020)*; See Ellingsworth v. Hartford Fire Ins. Co.,* 247 F. Supp. 3d 546, 556 (E.D. Pa. 2017) ("A constructive discharge constitutes an 'adverse employment action' for purposes of Title VII"). Lastly, Plaintiffs satisfy element three of Asbhy's retaliation claim, the causal connection, by alleging Ashby engaged in her protected activities shortly before Defendants

13

took the alleged adverse actions against her, thus allowing for the reasonable inference that her protected activities were the catalyst for Defendants' adverse actions. (Doc. 1, ¶¶ 127, 130, 152-56). To determine whether there is a causal connection between an adverse action and a plaintiff's protected activity, courts may look to the "ancient and simple 'but for' common law causation test," or whether there is an unusually suggestive proximity between the protected activity and the adverse action. *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 332 (2020); *see Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007), *as amended* (Aug. 28, 2007). At this stage of the litigation, the allegations in Plaintiffs' complaint suffice to establish the final element of their retaliation claim, as discovery will allow for the fact intensive analysis required to determine causation. *Mercer*, 26 F. Supp. 3d at 447 ("As for the causation analysis, it is highly fact-based, and depends on the particular context in which the events occurred." (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir.2000)); *see Barone v. Idexcel, Inc.*, 1:22-CV-01232, 2023 WL 146240, at *6 (M.D. Pa. Jan. 10, 2023) ("Given the timing of the alleged protected activity and adverse action, and noting the liberal pleading standards embodied in the Federal Rules of Civil Procedure, the Court concludes that Plaintiff has plausibly alleged a causal relationship between his complaints and [parent company's] alleged adverse conduct.")

Lastly, as argued by Plaintiffs, Ashby "filed her PHRC charge against both the PA AFL-CIO and the National AFL-CIO, creating a reasonable inference, for purposes of the pleading stage, that both entities were involved in the adverse actions taken against her that immediately followed." (Doc. 26, at 26). Further, Ashby complained directly to National AFL-CIO about the harassment occurring at PA AFL-CIO. (Doc. 1, ¶¶ 127, 152). As an alleged joint employer with PA AFL-CIO, National AFL-CIO is responsible for the actions

14

of PA AFL-CIO and thus Ashby may assert her retaliation claim against it. *See Barone*, 2023 WL 146240, at *7 (declining to dismiss Title VII retaliation claims against one joint employer for claims that allegedly occurred at the other joint employer's worksite). As National AFL-CIO has failed to point to any compelling case law suggesting otherwise, this Court agrees. Accordingly, National AFL-CIO's motion to dismiss Ashby's retaliation claim **DENIED**.

### D. Punitive Damages Claim

PA Defendants argue that Plaintiffs' request for punitive damages under the PHRA fails as a matter of law. (Doc. 23, at 11-12). Plaintiffs respond that while punitive damages may not be available under the PHRA, punitive damages are awardable under Title VII, the ADA, and Section 1981. The Court finds a clear basis for Plaintiffs' demand for punitive damages under Title VII and Section 1981. *See Two Two v. NAPA Transp., Inc.,* 1:17-CV-02222, 2020 WL 5370039 (M.D. Pa. Sept. 8, 2020) ("a plaintiff may recover punitive damages for a § 1981 race discrimination claim. . ."); *see Hricenak v. Mickey Truck Bodies*, 4:21-CV-00694, 2024 WL 1604650, at *10 (M.D. Pa. Apr. 12, 2024) (recognizing punitive damage are recoverable under Title VII). Accordingly, PA Defendants' motion to dismiss Plaintiffs' request for punitive damages will be **DENIED**.

## IV. Conclusion

Based on the foregoing, Defendants' motions to dismiss are **DENIED**. (Doc. 14; Doc. 16). An appropriate Order follows.

Dated: July 29, 2024

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**